UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x
                                                 :
UNITED STATES OF AMERICA                         :
                                                 :
        v.                                       :
                                                 :   Case No. 1:08-CR-00366-RLC
                                                 :
JAMES TREACY,                                    :
                                                 :
        Defendant.                               :
                                                 :
-------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON THE STATUTE OF LIMITATIONS**

**I.   PRELIMINARY STATEMENT**

Defendant James Treacy respectfully moves to dismiss the Indictment as time-barred. The government has failed to allege the commission of a single act within the applicable five-year limitations period which could constitute a violation of either the conspiracy or securities fraud statutes at issue in the Indictment.

**II.   FACTUAL BACKGROUND**

The Indictment alleges that various executives at Monster Worldwide, Inc. ("Monster") engaged in a scheme to backdate stock option grants. A stock option is a form of compensation which gives its holder a right to buy a share of stock on a future date at a set price. The Indictment alleges that the co-conspirators routinely looked back in time to select advantageous grant dates for these options based on instances when Monster's stock price had closed at or near a low point for the month or quarter, resulting in stock option grants which were "in the money" on the day they were in fact awarded. The Indictment asserts that Mr. Treacy and his alleged

co-conspirators failed to properly account for the value of these option grants in the Company's filings with the Securities and Exchange Commission ("SEC").

The conduct at issue, a series of purportedly backdated stock option grants and corresponding SEC filings made by the Company, all took place more than five years before the Indictment was returned. Indeed, some of the events at issue occurred as long ago as 1997. The only backdated grants that are alleged with specificity in the Indictment were made in early 2000 and April 2001. Above all, the most recent conduct which could be deemed in furtherance of the alleged conspiracy in Count One occurred in March 2002, with the signing by Mr. Treacy of a Form 10-K. That act also would be the most recent event with respect to the substantive securities fraud charged in Count Two. Hence, we respectfully submit that all charges relating to this backdating scheme are time-barred.

### A. The Indictment

Count One of the Indictment alleges that former CEO Andrew McKelvey, former General Counsel Myron Olesnyckyj, and defendant James Treacy (the former Chief Operating Officer and President) participated in a scheme, from in or about 1996 through in or about June 2006: (1) to backdate stock option grants; (2) to fail to record and report a compensation expense against net income for the value of these backdated stock options, as would be required under applicable accounting rules; and (3) to cause the company to report materially false and misleading financial results in its public filings as a consequence of the incorrect accounting, all in violation of 18 U.S.C. § 371 (2000).

Count One alleges that Mr. Treacy and others committed various overt acts in furtherance of the purported conspiracy charged in Count One. The last and most recent overt act contained

2

in the Indictment alleges that on or about March 28, 2002, Treacy signed Monster's Annual Report on Form 10-K for the year ending December 31, 2001. Ind. ¶ 57(j).

Count Two charges Mr. Treacy with Securities Fraud in connection with the backdating scheme, in violation of 15 U.S.C. § 78j(b), 78ff (2000); 17 C.F.R. § 240.10b-5 (1951); and 18 U.S.C. § 2 (2000). Specifically, Count Two alleges that from in or about 1996 up to and including June 2006, Mr. Treacy and others committed securities fraud by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers of Monster securities.

### B. The Tolling Agreements Between the Parties

In February 2007, the United States Attorney's Office contacted defense counsel to discuss Mr. Treacy's status in the investigation. Following these discussions, on March 23, 2007, with an eye clearly on the impending five-year anniversary of the above-described last overt act (which was then just days away, on March 28, 2007), the parties entered into an agreement tolling the statute of limitations for two months, until May 23, 2007. The tolling agreement was subsequently extended on May 9, 2007; July 20, 2007; September 20, 2007; October 18, 2007; November 20, 2007; and January 23, 2008, for a final thirty-day period. Thereafter, the government did not seek any further extension of the agreement, and the tolling agreement expired by its terms on February 23, 2008.

On April 24, 2008, two months after the expiration of the last tolling agreement and more than *six years* after the commission of the most recent overt act, the grand jury returned the Indictment against Mr. Treacy.

## III. ARGUMENT

### A. Count One Must be Dismissed Because It Does Not Allege an Overt Act Occurring Within the Statute of Limitations.

Count One is time-barred because it does not allege an overt act in furtherance of the conspiracy which occurred within the applicable statute of limitations.

The conspiracy charge alleged in Count One is governed by a five-year statute of limitations. *See* 18 U.S.C. § 3282 (2000) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed.").

The purpose of statutes of limitations is "to protect individuals from having to defend themselves against charges when the basic facts may have been obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970). In criminal cases, statutes of limitations are "to be liberally interpreted in favor of repose." *United States v. Scharton*, 285 U.S. 518, 522 (1932); *see United States v. Marion*, 404 U.S. 307, 322 n.14 (1971) (discussing the policy in favor of repose).

The duration of a conspiracy for limitations purposes depends on whether the alleged conspiracy requires the commission of an overt act. Under section 371, the government must demonstrate that "the conspiracy operated within the five-year period preceding the indictment, and that *a conspirator knowingly committed at least one overt act in furtherance of the scheme within that period.*" *United States v. Salmonese*, 352 F.3d 608, 614 (2d Cir. 2003) (citing *Grunewald v. United States*, 353 U.S. 391, 396-97 (1957)) (emphasis added). Each of these elements must be alleged in the indictment for it to be valid. *See United States v. Rutkoske*, 394 F. Supp. 2d 641, 644 (S.D.N.Y. 2005).

Almost all of the overt acts listed in Count One took place more than six years before this Indictment was filed. In any event, the most recent overt act set forth in the Indictment is the allegation that Mr. Treacy signed Monster's Form 10-K filing on or about March 28, 2002. That date -- March 28, 2002 -- plainly was significant for both parties in light of the tolling agreement executed by the parties a few days before March 28, 2007, the five-year anniversary of the last overt act. Although the parties extended the tolling agreement on several occasions over the subsequent eleven-month period, the last extension expired on February 23, 2008. Taking into account the tolled time period, the government therefore had to indict the case on or before February 28, 2008 to come within the statute of limitations. The indictment in this case was returned on April 24, 2008 – almost two full months after the limitations period had expired.

Notwithstanding this fatal defect, we anticipate the government likely will try to resurrect these otherwise time-barred charges. We anticipate the government will state that Count One charges that the conspiracy lasted until in or about June 2006. But merely alleging, without specificity, that a conspiracy continued to a certain date is not sufficient to meet the requirements of section 371. As noted above, the government must *also* allege that an overt act was committed within the five-year limitations period. *United States v. Salmonese*, 352 F.3d at 614; *United States v. Rutkoske*, 394 F. Supp. 2d at 644. Here, the last overt act identified in the Indictment is the signing of the Form 10-K on March 28, 2002.

The government may nevertheless point to other allegations, not presently described as overt acts, which purportedly occurred after March 28, 2002. For example, the Indictment mentions that Monster's Forms 10-K for the years 2003-2005 purportedly contained misstatements regarding the Company's net income. Ind. ¶ 50. But to the extent that the government is relying on filings that merely *failed to correct* misstatements of earnings

contained in previous filings, such filings, even if caused by one of the co-conspirators (other than Mr. Treacy, who was gone from the Company by then), would not suffice to extend the applicable limitations period. As the Supreme Court has held, "after the criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment." *Grunewald*, 353 U.S. at 401-02. As the Court stated:

> [A]llowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators.

*Id.* at 402. *See also Korn v. Merrill*, 403 F. Supp. 377, 388 n. 19 (S.D.N.Y. 1975) (Carter, J.) (noting that continuing injury is not sufficient to toll the statute of limitations for conspiracy). Thus, mere failure to *correct* misstatements or omissions in prior public filings would not suffice to include these later filings as part of an ongoing conspiracy. *See also Malhotra v. The Equitable Life Assur. Society of U.S.*, 364 F. Supp. 2d 299, 306 (E.D.N.Y. 2005) ("continued omission" is not a viable theory to extend the statute of limitations for securities fraud).

6

Additionally, we anticipate the government may rely on the allegation that in April 2006 Mr. Treacy exercised approximately 5,000 options from an earlier grant which was supposedly backdated. Ind. ¶ 33. We suspect the government inserted this allegation (which is so removed in time from 99 percent of the events at issue in the Indictment) in order to argue that the defendant's knowing receipt of "anticipated proceeds" of the conspiracy could be considered a timely overt act. *Salmonese*, 352 F.3d at 611. But the government's tortured effort in this regard simply does not meet the applicable legal standard.

"The crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Grunewald*, 353 U.S. at 397. Courts look to the allegations in the Indictment to determine the "scope of the conspiratorial agreement." *Salmonese*, 352 F.3d at 615 (2d Cir. 2003).

The conspiracy alleged in Count One was to deceive the investing public and the SEC by failing to report a compensation expense for backdated options. Backdating options (or, to state it more accurately, granting options that have a grant date which coincides with a historical date on which company's stock was trading at a low price) is not against the law. What is illegal is failing to properly *account* for such options by recording a compensation expense. *See* Ind. ¶ 11 ("[U]nder APB 25 a company was required to record and report a compensation expense for any options issued 'in the money' . . . ."). Thus, because the purpose of the conspiracy alleged in Count One was not economic enrichment, Treacy's exercise of the purportedly backdated grant is not an overt act in furtherance of the conspiracy. Put another way, we can be sure the

prosecution would consider the object of the conspiracy to have been achieved even had Treacy *never* exercised any backdated options.

Finally, the government may assert that Treacy was employed with Monster until December 2002 and served on Monster's board of directors until December 2003. Ind. ¶ 3. His continued employment, however, cannot in and of itself be deemed to be in furtherance of the conspiracy, because there is no allegation that his employment as such in any way advanced the goals of the conspiracy. While certain court decisions suggest that repetitive acts can be combined as a single overt act, such is not the case here. *See United States v. McGuinness*, 764 F. Supp. 888, 893 (S.D.N.Y. 1991) (noting the absence of case law addressing whether multiple events could be considered a single overt act, but holding that multiple improper payments to union officials was a continuing offense that could be alleged as a single overt act). Even if the consolidation of multiple similar events or acts could be considered an overt act, it is still a series of discrete acts, and not a broad, continuing *relationship* like Mr. Treacy's employment and service on the board of directors.

Accordingly, for all of the foregoing reasons, the Court must dismiss Count One for failure to allege an offense within the five-year statute of limitations.

### B.  Count Two Also Must Be Dismissed As Time-Barred

As with the conspiracy statute, the substantive securities fraud statutes (15 U.S.C. §§ 78j(b), 78ff(2000)) alleged to have been violated by Mr. Treacy in Count Two are governed by the same five-year statute of limitations for federal offenses. *See* 18 U.S.C. § 3282 (2000). Because Count Two fails to allege any facts in support of a securities fraud that occurred within the applicable period, it too must be dismissed.

Count Two does not allege any specific public filing which purportedly contains a false or misleading statement or omission. Count Two does expressly incorporate by reference all of the allegations contained in Count One, but the only public filing connected to Mr. Treacy that could even remotely qualify as a substantive crime committed *by him* (as opposed to a co-conspirator) would be the signing of Monster's 10-K on March 28, 2002 -- and that date is clearly outside the statute of limitations for the reasons set forth in Part A, *supra*.

Insofar as Count Two incorporates Count One by reference, Count Two could be deemed to include the actions related to Monster's Forms 10-K for 2003 through 2005, but none of the statements or omissions in those public filings could be construed as having been made or caused by Mr. Treacy because, as even the Indictment must acknowledge, Mr. Treacy left his executive position in December 2002. Although he remained on the board for another year, it is beyond dispute that Mr. Treacy never signed a Monster Form 10-K or any other Monster public filing after March 28, 2002.[1]

Since Count Two is not a conspiracy count, the actions of alleged co-conspirators in making or causing false statements or omissions in Monster's public filings from 2003-2005 has no bearing on Mr. Treacy's exposure to a substantive securities fraud charge. Accordingly, in the absence of any allegation that *Mr. Treacy* took any action that could be deemed to constitute securities fraud after March 28, 2002, the charge alleged in Count Two is time-barred and should be dismissed.

---

[1] And, for the reasons set forth in our argument relating to Count One, the fact that Monster may not have corrected misstatements or omissions from earlier 10-Ks is not sufficient to show an ongoing scheme. *Grunewald*, 353 U.S. at 401-02; *Korn*, 403 F. Supp. at 388 n. 19; *Malhotra*, 364 F. Supp. 2d at 306.

## IV. CONCLUSION

For the reasons set forth above, the indictment must be dismissed for failure to allege an offense within the applicable statute of limitations.

Respectfully submitted,

_____
Reid H. Weingarten
Evan T. Barr
Sandra E. Cavazos
STEPTOE & JOHNSON LLP
750 Seventh Avenue
Suite 1800
New York, New York 10019
(212) 506-3900

Counsel for James Treacy

Dated: June 30, 2008