UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------x
                                                 :
UNITED STATES OF AMERICA                         :
                                                 :
     v.                                          :
                                                 :   Case No. 1:08-CR-00366-RLC
JAMES TREACY,                                    :
                                                 :
              Defendant.                         :
                                                 :
-------------------------------------------------x
```

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JAMES TREACY'S MOTION TO DISMISS
PORTIONS OF COUNT TWO ALLEGING
<u>VIOLATIONS OF RULE 10b-5(a) AND (c)</u>**

Defendant James Treacy respectfully moves the Court for an order dismissing those portions of Count Two (Securities Fraud) which relate to allegations of so-called "scheme liability" under Rule 10b-5.

The Indictment alleges that Mr. Treacy and others at Monster Worldwide, Inc. ("Monster") conspired to backdate stock option grants to Monster employees and to fail to properly account for such backdated options as a compensation expense in the Company's income statements, and as incorporated in various filings with the Securities and Exchange Commission.

Backdating of stock options is not illegal so long as the practice is disclosed to the investing public and a compensation expense is recorded. This case solely turns on the alleged failure to disclose the legal practice of backdating stock options. However, a pure "failure to disclose" case cannot be transformed into a "scheme" case under Rule 10b-5(a) or (c).

Accordingly, those portions of Count Two alleging violations of Rule 10b-5(a) and (c) must be dismissed.

## I. FACTUAL BACKGROUND

The Indictment alleges that various executives at Monster Worldwide, Inc. ("Monster") engaged in a conspiracy to backdate stock option grants. A stock option is a form of compensation which gives its holder a right to buy a share of stock on a future date at a set price. The Indictment alleges that the co-conspirators routinely looked back in time to select advantageous grant dates for these options based on instances when Monster's stock price had closed at or near a low point for the month or quarter, resulting in stock option grants which were "in the money" on the day they were in fact awarded. The Indictment asserts that Mr. Treacy and his alleged co-conspirators failed to properly account for the value of these option grants in the Company's filings with the Securities and Exchange Commission ("SEC").

Count Two of the Indictment charges Mr. Treacy with violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers of Monster securities. Indictment ¶ 59.

## II. ARGUMENT

The portions of Count Two alleging violations of Rule 10b-5(a) and (c) must be dismissed because this is a pure "disclosure" case.

Section 10(b) of the Securities Exchange Act of 1934 makes it a crime to:

> Use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78(b).

Rule 10b-5, which was promulgated pursuant to section 10(b), contains three parts, and makes it unlawful:

> (a) to employ any device, scheme, or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Count Two alleges that Mr. Treacy violated all three prongs of Rule 10b-5. Ind. ¶ 59. However, subsections (a) and (c), which involve so-called "scheme" liability,[1] apply only when the underlying conduct is inherently fraudulent. Thus, typical "scheme" liability cases involve shell companies, bogus agreements and phony invoices; courts have refused to permit allegations of "scheme" liability to survive where facially fraudulent vehicles were absent. *See*

---

[1] *See Briton v. Parker*, C.A. No. 06-cv-01797-MSK-KLM, 2007 WL 2871003, at * 4 (D. Colo. Sept. 26, 2007).

3

*e.g., In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 173-74 (D. Mass. 2003) ("If it turns out that the entities were viable, legitimate, ongoing strategic partners, and that the only fraud was misrepresenting the relationship between L&H and the strategic partners, *Primavera* would support a conclusion of lack of primary liability [*i.e.*, "scheme" liability] under 10(b).").

There is no dispute that Monster was and is a completely legitimate company. Moreover, "backdating" stock options (*i.e.*, selecting dates which are favorable to the grantee in retrospect) is not itself illegal. *See United States v. Shanahan*, 2008 WL 2225731 at * 5 (E.D. Mo., May 28, 2008); *In re Comverse Technology, Inc. Securities Litigation*, 543 F. Supp. 2d 134, 138 (E.D.N.Y. 2008). A company is permitted to select advantageous grant dates in retrospect provided the practice is disclosed in public filings, and provided the corresponding compensation expense is properly accounted for. *Id.* Thus, this case is purely about an alleged failure to disclose the backdating of stock options, which fits squarely within the rubric of a subsection (b) false statements/material omission theory.

A pure disclosure case, however, cannot be transformed into a "scheme" case under 10b-5(a) or (c). *See In re Royal Dutch/Shell Transport Sec. Litig.*, No. 04-374 (JAP), 2006 WL 2355402, at *9 (D.N.J. Aug. 14, 2006) (rejecting "scheme" liability where "such allegations [were] nothing more than a Rule 10b-5(b) fraudulent misrepresentation claim ... which may not be recast as a Rule 10b-5(a) or (c) claim."); *Lentell v. Merill Lynch & Co. Inc.*, 396 F.3d 161, 177 (2d Cir. 2005) ("We hold that where the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c) . . . .").

As Judge Cote has stated: "Because the core conduct alleged is in fact a misstatement, it would be improper to impose primary liability on [defendant] by designating the alleged fraud a

'manipulative device' [under 10b-5(a) or (c)] rather than a 'misstatement' [under 10b-5(b)]." *SEC v. KPMG LLP*, 412 F.Supp.2d 349, 378 (S.D.N.Y. 2006). *Cf. United States v. Bongiorno*, 2006 WL 1140864, at * 8 (S.D.N.Y. May 1, 2006) (noting that subsections (a) and (c) apply to situations where there are no misstatements at issue); *United States v. Finnerty*, 2006 WL 2802042, at * 3 (S.D.N.Y. Oct. 2, 2006) ("Because the vast majority of Rule 10b-5 cases involve false or misleading statements, the law with respect to subsections (a) and (c) is not very refined.").

The government may invoke the oft-cited rule that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002). But Mr. Treacy is not challenging the government's evidence or claiming that the Indictment is not pled with sufficient specificity. Rather, the basis of this motion is that the facts alleged in the Indictment do not (and cannot) state an offense under subsections (a) or (c) *as a matter of law*. Under these circumstances, "it would be improper and a waste of resources for everyone involved to conduct a lengthy trial ... and submit the case to the jury only to rule on a post-trial motion that the government's theory of criminal liability fails no matter what facts it was able to adduce at trial." *United States v. Bongiorno*, 2006 WL 1140864, at * 4.

Accordingly, this Court should promptly dismiss the allegations in Count Two based on subsections (a) and (c) of Rule 10b-5.

## III. CONCLUSION

For the reasons set forth above, those portions of Count Two alleging violations of Rule 10b-5(a) and (c) must be dismissed.

Respectfully submitted,

_____
Reid H. Weingarten
Evan T. Barr
Sandra E. Cavazos
STEPTOE & JOHNSON LLP
750 Seventh Avenue
Suite 1800
New York, New York 10019
(212) 506-3900

Counsel for James Treacy

Dated: June 30, 2008

6