FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
Maria N. Lerner (ML 2546)
Richard Craig Smith (Pro Hac Vice Motion Pending)
Stephen M. McNabb (Pro Hac Vice Motion Pending)
Kelly E. Garrett (Pro Hac Vice Motion Pending)

*Attorneys for Non-Party, Fulbright & Jaworski L.L.P.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------- x
:
UNITED STATES OF AMERICA,                      :
:
-against-                                      :       CASE NO. 1:08-CR-00366-RLC
:
JAMES TREACY,                                  :
:
Defendant.                                     :
:
:
---------------------------------------------- x

**OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER PERMITTING THE ISSUANCE OF A RULE 17(c) SUBPOENA TO NON-PARTY, FULBRIGHT & JAWORSKI L.L.P. OR, IN THE ALTERNATIVE, <u>MOTION TO QUASH RULE 17(c) SUBPOENA</u>**

Non-party Fulbright & Jaworski L.L.P. ("Fulbright") respectfully submits this opposition, along with the accompanying memorandum of law, to Defendant's Motion for an Order Permitting the Issuance of Rule 17(c) Subpoenas, dated June 30, 2008 ("Defendant's Motion") or, in the alternative, this motion to quash any subpoena issued to Fulbright pursuant to Defendant's Motion, on the grounds that it (1) fails to comply with established standards for

-2-

Rule 17(c) subpoenas; and (2) seeks to subpoena information that is protected by the attorney-client and/or attorney work product privileges.

Fulbright respectfully requests that Defendant's Motion be denied, or in the alternative, that any subpoena issued to Fulbright be quashed.

Dated: July 22, 2008

Respectfully submitted,

_____
Maria N. Lerner (ML 2546)
Richard Craig Smith (Pro Hac Vice Motion Pending)
Stephen M. McNabb (Pro Hac Vice Motion Pending)
Kelly E. Garrett (Pro Hac Vice Motion Pending)
FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

*Attorneys for Non-Party, Fulbright & Jaworski L.L.P.*

FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
Maria N. Lerner (ML 2546)
Richard Craig Smith (Pro Hac Vice Motion Pending)
Stephen M. McNabb (Pro Hac Vice Motion Pending)
Kelly E. Garrett (Pro Hac Vice Motion Pending)

*Attorneys for Non-Party, Fulbright & Jaworski L.L.P.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
:
UNITED STATES OF AMERICA,                :
:
-against-                                :
:     CASE NO. 1:08-CR-00366-RLC
JAMES TREACY,                            :
:
Defendant.                       :
:
:
:
:
----------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANT'S
MOTION FOR AN ORDER PERMITTING THE ISSUANCE OF A RULE 17(c)
SUBPOENA TO NON-PARTY, FULBRIGHT & JAWORSKI L.L.P.
OR, IN THE ALTERNATIVE, MOTION TO QUASH RULE 17(c) SUBPOENA**

I.　　PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of non-party Fulbright & Jaworski L.L.P. ("Fulbright") in support of its opposition to Defendant's Motion for an Order Permitting the Issuance of Rule 17(c) Subpoenas, dated June 30, 2008 ("Defendant's Motion" or "Treacy's Motion") or, in the alternative, its motion to quash any subpoena issued to Fulbright pursuant to Defendant's Motion, on the grounds that it (1) fails to comply with established

standards for Rule 17(c) subpoenas; and (2) seeks to subpoena information that is protected by the attorney-client and/or attorney work product privileges.

## II.    FACTUAL BACKGROUND

Defendant James Treacy, former President and Chief Operating Officer of Monster Worldwide Inc. ("Monster"),[1] is charged with securities fraud and conspiracy to commit securities fraud, file false reports with the SEC, make false statements to auditors and falsify books and records in connection with a scheme to backdate stock option grants made to Monster employees. Treacy's Motion alleges that Fulbright was "outside counsel responsible for administering Monster's options program" (Def.'s Mot. 2), but he drastically mischaracterizes the scope of Fulbright's representation of Monster and the extent of Fulbright's involvement in Monster's options program (see Berman Aff. Ex. A ¶¶ 7-17). Based on this mischaracterization, Treacy seeks an exceptionally broad subpoena requiring Fulbright to produce "[a]ll records (including electronic records) relating to TMP Worldwide Inc.'s or Monster Worldwide Inc.'s stock option grants and option granting practices, for the period December 1, 1996 through June 30, 2006." (Def.'s Mot. 3.)

Beginning in 1996, Fulbright served as outside counsel to Monster providing general corporate legal advice. (Berman Aff. Ex. A ¶ 3.) Fulbright has never represented Treacy individually. (Berman Aff. Ex. A ¶ 4.)

Treacy alleges that Fulbright "rendered legal advice to Monster regarding the options grants and drafted or reviewed key documents including options agreements, unanimous written consent ("UWCs") forms signed by the Compensation Committee members approving the option grants, and proxy statements." (Def.'s Mot. 3.) This representation is overbroad and misleading. Fulbright did draft the 1996 Stock Options Plan and the 1999 Long Term Incentive Plan

---

[1] In 2003, TMP Worldwide, Inc. changed its corporate name to Monster Worldwide, Inc.

(Berman Aff. Ex. A ¶ 7), but at no time did Fulbright administer Monster's stock option plan; this task was performed by Monster's human resources department at the direction of Monster's Compensation Committee (Berman Aff. Ex. A ¶ 10). Fulbright drafted several UWCs as to the form of the consent only; Fulbright relied on facts and information provided by Monster to determine the content of the UWCs. (Berman Aff. Ex. A ¶ 11.) Fulbright was involved in the preparation of proxies, 10-Ks, and 10-Qs, but Fulbright was not solely responsible for drafting these documents, which were prepared based on facts and information provided by Monster. (Berman Aff. Ex. A ¶ 9.) Fulbright reviewed these documents with respect to form, but, with the exception of looking at director and officer questionnaires and with respect to verifying certain factual information related to the company (e.g., the size of the company as compared to its competitors), Fulbright did not approve or verify the facts contained therein. (Id.) Fulbright filed Form 4s and Form 5s, again based on facts and information provided by Monster and/or the recipient. (Berman Aff. Ex. A ¶ 16.) Specifically, Fulbright provided the following services to Monster with respect to stock option plans: conducting preliminary, exploratory research regarding re-pricing of options and option exchanges; handling acceleration issues, but Fulbright was only on the periphery on these issues; handling tax-related issues; and advising Monster on how an increase in the size of the 1999 Long Term Incentive Plan would affect the Plan's adoption by stockholders. (Berman Aff. Ex. A ¶ 8.)

In addition, Monster engaged Fulbright as outside counsel, primarily to assist Monster in connection with its initial public offering ("IPO"), which was in December 1996. (Berman Aff. Ex. A ¶ 3.) After the IPO, Fulbright counseled Monster with regard to acquisitions, corporate finance, tax, litigation, ERISA, labor-related issues, and intellectual property. (Berman Aff. Ex. A ¶ 3.)

At all times, Fulbright's communications with, work for, and advice to Monster have been non-public and confidential. (Berman Aff. Ex. A ¶ 5.) Monster has not waived any available privilege with respect to the documents requested in Treacy's Motion. (Berman Aff. Ex. A ¶ 6.)

### III.  ARGUMENT

First, Treacy's Motion fails to comply with the requirements of relevancy, admissibility, and specificity as established in United States v. Nixon, 418 U.S. 683 (1974). It also fails to comply with the more stringent standard for Rule 17(c) subpoenas issued to non-parties established by the Southern District of New York, which requires the proponent to show that the subpoena is "(1) reasonable, as construed as 'material to the defense,' and (2) 'not unduly oppressive for the producing party to respond.'" United States v. Tucker, 249 F.R.D. 58, 2008 U.S. Dist. LEXIS 11374, at *24 (S.D.N.Y. 2008) (internal citations omitted); see also United States v. Nachamie, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000). In addition, the vast majority of the documents requested by Treacy are protected from disclosure by the attorney-client privilege and/or work product doctrines. As Monster holds the privilege with respect to these documents, Fulbright is prohibited from producing the documents requested in Defendant's Motion absent Monster's waiver of privilege. Finally, the requested documents are available to Treacy from the government through Rule 16 of the Federal Rules of Criminal Procedure or, in the alternative, from Monster directly. It is our understanding that the government has made clear that it intends to produce these materials to Treacy consistent with its obligations under 18 U.S.C. § 3500 and any other applicable legal rules.

A.   **Defendant's Motion Fails to Comply with Standards for Rule 17 Subpoena**

1.   Legal Standard

Federal Rule of Criminal Procedure 17(c) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence." A 17(c) subpoena is not, however, a tool "to provide a means of discovery for criminal cases." Nixon, 418 U.S. at 698. On a motion to quash a Rule 17(c) subpoena, the subpoena's proponent bears the burden of proving that it should be enforced. Id. at 699. The Nixon court held that a party seeking enforcement of the subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 699-700. To prove these three factors, the proponent much establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

Id. Enforcement of 17(c) subpoenas are within the sound discretion of the district court. Id. at 702. The district court may also choose to modify the subpoena instead of fully quashing it. See Fed. R. Crim. P. 17(c)(2).

The Southern District of New York has held that the Nixon standard does not apply to Rule 17(c) subpoenas made by criminal defendants to third parties. United States v. Tucker, 249 F.R.D. 58, 2008 U.S. Dist. LEXIS 11374, at *24 (S.D.N.Y. 2008); United States v. Nachamie, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000). "The standard is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material

to his defense. A defendant in such a situation need only show that the request is (1) reasonable, as construed as 'material to the defense,' and (2) 'not unduly oppressive for the producing party to respond.'" Tucker at *24 (internal citations omitted). In both Tucker and Nachamie, the court excluded from the requested subpoenas attorney-client communications and attorney work product. See Tucker at *27 n.53 (excluding telephone calls placed from the Bureau of Prisons between potential government witnesses and their attorneys); see also Nachamie at 564 (excluding communications between potential government witnesses and prosecutors). In any event, Treacy fails to satisfy either the Tucker or Nixon standard.

    2.    **Defendant's Motion Fails Under the Less Stringent Tucker Test of Materiality and Reasonableness**

        a.    **Defendant's Motion Fails to Satisfy the Materiality Requirement**

Treacy's argument, in its entirety, regarding its satisfaction of the materiality requirement under the Tucker standard is as follows:

> With respect to the subpoena to Fulbright & Jaworski, there can be no question that the information requested is material to Mr. Treacy's defense. Fulbright & Jaworski prepared and reviewed the documentation surrounding the very options grants at issue in this case, including the UWCs and 10-K and 10-Q forms, which the Indictment alleges were false or misleading. Mr. Treacy is entitled to argue to the jury that he relied in good faith on Fulbright & Jaworski's review and approval of these documents.

(Def.'s Mot. 7 (internal citations omitted).) The problem with this argument, such as it is, is that Treacy drastically mischaracterizes the scope of Fulbright's representation of Monster. As stated above, Fulbright had limited involvement in the options grants at issue in this case and at no time did Fulbright administer Monster's options program. (Berman Aff. Ex. A ¶¶ 7-8, 10.) Fulbright prepared only *some* of Monster's UWCs, not all or even the vast majority of Monster's UWCs, as Defendant's Motion suggests. (Berman Aff. Ex. A ¶ 11.) In addition, those UWCs Fulbright did prepare were as to form only and based on facts and information provided by Monster.

(Berman Aff. Ex. A ¶ 11.) Furthermore, while Fulbright was involved in the preparation of drafts of Monster's 10-Ks and reviewed its 10-Qs, Fulbright was not solely responsible for drafting these documents. (Berman Aff. Ex. A ¶ 9.) Fulbright reviewed these documents with respect to form, but, with the exception of looking at director and officer questionnaires and with respect to verifying certain factual information related to the company (e.g., the size of the company as compared to its competitors), Fulbright did not approve or verify the facts contained therein. (Id.)

In addition, Treacy's argument states that he "is entitled to argue to the jury that he relied in good faith on Fulbright & Jaworski's review and approval of these documents." (Def.'s Mot. 7.) Treacy appears to be arguing that he relied upon communications between himself and Fulbright or between Fulbright and other Monster personnel on which Treacy was copied or which the other Monster personnel showed him. If Treacy is referring to documents on which he was not a recipient, was not copied, or was not shown, then it is not possible he could have "relied" upon these documents. If Treacy was a recipient or copied on these documents or if Treacy was shown these documents while employed at Monster, then either Treacy already has the documents that he is requesting or he can obtain them from Monster directly. In any case, Treacy could obtain the requested documents through means other than a subpoena of privileged documents from Fulbright.

Moreover, Treacy's argument appears to be a direct request for documents protected by the attorney-client privilege. Treacy does not hold the privilege and Monster has not waived the privilege. As recognized by the Southern District of New York in both <u>Tucker</u> and <u>Nachamie</u>, Fulbright is prohibited from producing privileged material

b.  **Defendant's Motion Is Unreasonable and Unduly Oppressive**

Treacy argues that his request is "reasonable in scope and not unduly oppressive." (Def.'s Mot. 9.) Treacy has requested almost ten years worth of documents, the production of which would require Fulbright to canvas both electronic and off-site storage over multiple offices. Because Fulbright worked on multiple matters for Monster that were completely unrelated to Treacy's request, Fulbright would be required to review all Monster files (both electronic and hard-copy) to ensure that Fulbright did not produce privileged attorney-client communications and attorney work product related to other Monster matters, thereby destroying privilege with respect to those other matters. In addition, it is unreasonable for Treacy to request documents that are either (1) already in his possession, such as those documents he claims to have "relied" upon; or (2) available through the government's production under Rule 16 of the Federal Rules of Criminal Procedure. For these reasons, Defendant's Motion fails to satisfy the less stringent Tucker test.

3.  **Defendant's Motion Also Fails Under the More Stringent Nixon Test**

Because Treacy's Motion fails the less stringent Tucker test, it would naturally also fail the more stringent Nixon test requiring (1) relevancy; (2) admissibility; and (3) specificity.[2] As discussed above, the requested documents fail the materiality test, and accordingly, are neither relevant or admissible. Moreover, because the requested material is protected from disclosure by the attorney-client privilege and/or attorney work product doctrines, the requested material is inadmissible. Treacy's Motion also fails the specificity prong because (1) the argument

---

[2] Defendant's Motion misstates the Nixon test in its heading for this section of its argument. (Def.'s Mot. 10.) Treacy's heading reads "The Subpoenas Also Satisfy the Higher Standard Applicable to Subpoenas *to* the Government." Id. (emphasis added). The Tucker court distinguishes between subpoenas issued by the government (as is the case in Nixon) and those issued by criminal defendants (as is the case in Tucker). See Tucker at *24. Whether a subpoena is issued *to* the government is not at issue in either of those cases or in the present case.

repeatedly mischaracterizes the scope of Fulbright's representation of Monster, and (2) as stated above, Defendant's Motion is unreasonable and unduly burdensome with respect to Fulbright.

B. **The Attorney-Client and Attorney Work Product Privileges Prohibit Fulbright from Disclosing the Documents Requested by Defendant's Motion**

The attorney-client privilege "is one of the oldest recognized privileges" in the law, and it applies not only to individuals, but also to corporations that are clients. Upjohn Co. v. United States, 449 U.S. 383, 389-90 (1981); see also Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). The privilege protects disclosure of communications between an attorney and any corporate employee under the following conditions:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

United States v. Stein, 488 F. Supp. 2d 350, 367 (S.D.N.Y. 2007) (quoting United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997)). The party asserting the privilege must demonstrate that the requested documents are: "(1) communication[s] between client and counsel, which (2) [were] intended to be and [were] in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." Id. at 368 (quoting United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)). Similarly, attorney work product is privileged and protected from disclosure. Mercator Corp. v. United States, 318 F.3d 379, 383 (2d Cir. 2002). "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." United States v. Nobles, 422 U.S. 225, 238 (U.S. 1975). In addition, attorneys are obligated by rules of professional responsibility to "assert the privilege unless it is

waived by the client." N.Y. Lawyer's Code of Prof'l Responsibility Canon 4 (2007); see also N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.19 (2008).

Fulbright and its attorneys are undoubtedly professional legal advisors from whom Monster sought legal advice on a number of issues. As explained above, Fulbright had limited involvement in Monster's stock option program, but to the extent that Monster did communicate with Fulbright regarding this issue, the communications were between Fulbright and its client, Monster, made in confidence with the expectation that the communications would remain non-public and confidential. Fulbright has in fact kept these communications non-public and confidential. Monster owns this privilege; Treacy does not speak for Monster, and therefore, does not have the authority to waive this privilege. Monster has not waived this privilege. Accordingly, Fulbright is obliged to assert the privilege and prohibited from disclosing communications with Monster as requested in Defendant's Motion.

C.  **Conclusion**

Treacy's request fails to comply with the established standard for Rule 17(c) subpoenas, whether using the more stringent Nixon standard or the less stringent Tucker standard. In addition, Treacy seeks information that Fulbright is prohibited from providing because it is protected from disclosure by the attorney-client privilege and/or attorney work product doctrines. Because Treacy repeatedly overstates the scope of Fulbright's representation of Monster with respect to the options-granting process, these requests amount to a "fishing expedition" for information that is not likely to be relevant to his defense. Based on Treacy's stated argument that he seeks to use this material to show he "relied" upon Fulbright's review and approval of certain documents, it is clear that Treacy either already has these documents or could obtain them from Monster directly. Accordingly, it is inappropriate for Treacy to request privileged documents from Fulbright. For the foregoing reasons, Fulbright respectfully requests that the

Court deny his motion, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, for an order permitting the issuance of the subpoenas *duces tecum* described therein. In the alternative, Fulbright respectfully requests that the Court grant Fulbright's motion to quash the Rule 17(c) subpoena as to Fulbright.

Dated: July 22, 2008                    Respectfully submitted,

                                        /s/ Maria N. Lerner
                                        _____
                                        Maria N. Lerner (ML 2546)
                                        Richard Craig Smith (Pro Hac Vice Motion Pending)
                                        Stephen M. McNabb (Pro Hac Vice Motion Pending)
                                        Kelly E. Garrett (Pro Hac Vice Motion Pending)
                                        FULBRIGHT & JAWORSKI L.L.P.
                                        Market Square
                                        801 Pennsylvania Avenue, NW
                                        Washington, DC 20004
                                        Telephone: (202) 662-0200
                                        Facsimile: (202) 662-4643

                                        *Attorneys for Non-Party, Fulbright & Jaworski L.L.P.*

FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
Richard Craig Smith
Stephen M. McNabb
Kelly E. Garrett

*Attorneys for Non-Party,
Fulbright & Jaworski L.L.P.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
:
UNITED STATES OF AMERICA,      :
:
-against-      :
:   CASE NO. 1:08-CR-00366-RLC
JAMES TREACY,      :
:
Defendant.      :
:
------------------------------------------------- x

**STATE OF NEW YORK    )**
                      **SS.:**
**COUNTY OF NEW YORK )**

## EXHIBIT A

### AFFIDAVIT OF GREGG J. BERMAN

GREGG J. BERMAN, being duly sworn, deposes and says:

1.   I am a partner in the New York office of Fulbright & Jaworski L.L.P ("Fulbright"). I was an associate at Fulbright and a predecessor firm from 1987, when I was graduated from law school, until I became a partner in 1998.

2.   I met Myron Olesnyckyj ("Olesnyckyj") at Fulbright in 1987. Olesnyckyj left Fulbright in 1994 to join Monster Worldwide Inc. ("Monster").

3. In 1996, Monster engaged Fulbright as outside counsel primarily to assist Monster in connection with its initial public offering ("IPO"). After the IPO, Fulbright counseled Monster with regard to acquisitions, corporate finance, tax, litigation, ERISA, labor-related issues, and intellectual property.

4. Fulbright has never represented James Treacy individually.

5. At all times, Fulbright's communications with, work for, and advice to Monster have been non-public and confidential.

6. Monster has not waived any available privilege with respect to Fulbright's representation of Monster generally or the documents requested in Defendant's Motion specifically.

7. Fulbright drafted the 1996 Stock Option Plan and the 1999 Long Term Incentive Plan. I do not recall any discussions regarding granting options before a plan was in place.

8. Fulbright provided the following services to Monster with respect to stock option plans: advising Monster on how an increase in the size of the 1999 Long Term Incentive Plan would affect the Plan's adoption by stockholders; handling tax-related issues; conducting exploratory research regarding re-pricing of options and option exchanges; and handling acceleration issues, but Fulbright was only on the periphery of these issues.

9. While Fulbright was involved in the preparation of proxies, 10-Ks, and 10-Qs on behalf of Monster, Fulbright was not solely responsible for drafting these documents. With respect to proxies, Fulbright prepared templates and completed them to the best of our ability based on questionnaires; Monster personnel then completed the proxies. Fulbright prepared drafts of Monster's 10-K filings and reviewed its 10-Q filings based on facts and information provided by Monster. Fulbright reviewed these documents with respect to form, but, with the exception of looking at director and officer questionnaires and with respect to verifying certain factual information related to the company (e.g., the size of the company as compared to its competitors), Fulbright did not approve or verify the facts contained therein.

10. Fulbright was at no time responsible for administering Monster's options program. Based on information and belief, Monster's options program was administered by Monster's Human Resources department at the direction of Monster's Compensation Committee.

11. I do not recall Fulbright providing the form of unanimous written consent ("UWC") used by Monster. Fulbright prepared only some of the UWCs, and Fulbright prepared those as to the form of the consent only. Fulbright relied on facts and information provided by Monster in doing so. I do not recall Fulbright reviewing UWCs that Fulbright did not prepare.

12. I do not recall discussing the retention of schedule A's to written consents.

13. Fulbright did not engage in communications with or provide advice to Monster with respect to backdating options grants. Fulbright did not give Monster legal advice regarding the propriety of "as of" dating with respect to oral conversations between Monster's management and its Board of Directors.

14. Fulbright never maintained minute books for Monster's Board of Directors or Compensation Committee meetings.

15. Fulbright was sometimes involved with Monster's new employment agreements, but did not generally have a role regarding option grants.

16. Based on information and belief, any Form 4s or Form 5s that Fulbright drafted for Monster were based on facts and information provided by Monster and/or the recipient.

17. Fulbright developed first drafts of Compensation Committee reports. Fulbright's drafts would be based on the prior year's template, and the draft would then be circulated to Olesnyckyj and then the Compensation Committee. Before Fulbright filed each proxy, Fulbright would confirm that the Compensation and Audit Committees had approved the proxy.

_____
GREGG J. BERMAN

Sworn to before me this 2/27 day of July 2008

_____
Notary Public

BETTY ZEVALLOS
NOTARY PUBLIC, State of New York
No. 31-4820192
Qualified in New York County
Commission Expires April 30, 20__

75325266.2

- 3 -

FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
Maria N. Lerner (ML 2546)
Richard Craig Smith (Pro Hac Vice Motion Pending)
Stephen M. McNabb (Pro Hac Vice Motion Pending)
Kelly E. Garrett (Pro Hac Vice Motion Pending)

*Attorneys for Non-Party, Fulbright & Jaworski L.L.P.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

UNITED STATES OF AMERICA,

-against-

JAMES TREACY,

Defendant.

CASE NO. 1:08-CR-00366-RLC

------------------------------------------------x

**District of Columbia**       )
                               SS.:

**Kelly E. Garrett,** being duly sworn deposes and says:

1. That I am over eighteen years of age and am not a party to this action

2. On Tuesday, July 22, 2008 I served Non-Party, Fulbright & Jaworski L.L.P.'s *Motion and Memorandum of Law in opposition to Defendant's Motion for an Order Permitting the Issuance of a Rule 17(c) Subpoena to Non-Party, FULBRIGHT & JAWORSKI L.L.P. or, in the Alternative, Motion to Quash Rule 17(c) Subpoena* on the following attorneys:

-2-

Reid H. Weingarten, Esq.
Evan T. Barr, Esq.
Sandra E. Cavazos, Esq.
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, NY 10019
*Attorneys for Defendant James Treacy*

Joshua A. Goldberg, AUSA
United States Attorney's Office
Southern District of New York
The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, NY 10007

Deirdre McEvoy, AUSA
United States Attorney's Office
Southern District of New York
The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, NY 10007

Richard X. Fischer, Esq.
Navigant Consulting, Inc.
30 South Wacker Drive
Chicago, IL 60606
*Attorney for Navigant Consulting, Inc.*

James J. Benjamin, Esq.
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY 10022-2524
*Attorneys for Akin Gump Strauss Hauer & Feld LLP*

Paul Vizcarrondo, Esq.
Wachtell, Lipton, Rosen & Katz
51 W. 52nd Street
New York, NY 10019
*Attorneys for John Gaulding*

Douglas A. Rappaport, Esq.
DLA Piper
1251 Avenue of the Americas
New York, NY 10020-1104
*Attorneys for BDO Seidman*

by electronic and first class mail.

_____
Kelly E. Garrett

Sworn to before me this 22nd day of July 2008

_____
Notary Public

SARAH FOLEY BARHIGHT
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires October 31, 2011