UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :
UNITED STATES OF AMERICA,                 :

                 v.                                    :            OPINION

JAMES J. TREACY,                            :            08 Cr. 0366 (RLC)

         Defendant.                          :

------------------------------------------------------------X

APPEARANCES

Deirdre Ann McEvoy, Esq.
United States Attorney's Office
Southern District of New York
1 St. Andrews Plaza
New York, NY 10007
Assistant United States Attorney

Joshua Aaron Goldberg, Esq.
United States Attorney's Office
Southern District of New York
1 St. Andrews Plaza
New York, NY 10007
Assistant United States Attorney

David Matthew Fragale, Esq.
Steptoe & Johnson LLP (DC)
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Attorney for the Defendant

Evan T. Barr, Esq.
Steptoe & Johnson, LLP
750 Seventh Avenue
Suite 1900
New York, NY 10019
Attorney for the Defendant

Sandra Elaine Cavazos, Esq.
Steptoe & Johnson, LLP
750 Seventh Avenue
Suite 1900
New York, NY 10019
Attorney for the Defendant

ROBERT L. CARTER, District Judge

## Introduction

Defendant James Treacy has requested this court authorize subpoenas regarding Monster Worlwide Inc.'s ("Monster") stock option grants and option granting practices to Fulbright & Jaworski, LLP ("Fulbright"); BDO Seidman, LLP ("BDO Seidman"); Navigant Consulting Inc. ("Navigant"); three members of the Company's Compensation Committee (Michael Kaufman, Ronald Kramer, and John Gaulding) ("Compensation Committee"); and Akin Gump Strauss Haeur & Feld, LLP ("Akin Gump"). Fulbright and Akin Gump have moved to quash the subpoenas and the government has objected to the issuance of all subpoenas.

For the reasons stated below, all subpoenas are denied in their entirety.

## Background[1]

From 1998 until 2001, Treacy served as Chief Operating Officer ("COO") and Executive Vice-President of Monster, a company that provided a broad range of online recruitment services. From 2001 until 2002, Treacy served as Monster's President and COO, and was a member of if its Board of Directors from 1998 until 2003.

The government alleges that Treacy participated in a scheme to backdate stock option grants made to Monster employees. Allegedly, Treacy and others engaged in an illegal scheme to deceive by failing to record and report compensation expenses and backdated numerous stock options granted to Monster employees. The government contends that, by failing to record and report a compensation expense for the backdated options as required, Treacy and accomplices caused Monster to report materially false

---

[1] This Opinion assumes familiarity with the facts of this case and only relevant facts are summarized here.

3

and misleading financial results and created false impressions about Monster's option grant practices.

In order to prepare for trial, Treacy seeks access to documents in the care, custody and control of five third parties: (1) Fulbright, Monster's outside cousel; (2) BDO Seidman, Monster's outside auditor; (3) Navigant, a consulting firm; (4) Monster's Compensation Committee, who had authority to grant option awards; and (5) Akin Gump, the law firm that conducted an internal investigation for Monster regarding options backdating allegations.

Fulbright and Akin Gump have moved for the subpoenas to be quashed, and the government opposes the issuance of all subpoenas.[2]

**Applicable Law**

Rule 17(c) of the Federal Rules of Criminal Procedure governs the issuance of subpoenas in criminal proceedings.[3]  Rule 17(c) subpoenas are intended to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." U.S. v. Nixon, 418 U.S. 683, 698-99 (1974) (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 n. 5 (1951)).  Moreover, the subpoenas can only be used

---

[2] It is not clear that the government has standing to move to quash the subpoenas. "A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a propriety interest in the subpoenaed matter." United States v. Nachamie, 91 F.Supp.2d 552, 558 (S.D.N.Y. 2000) (Scheindlin, J.) The government does not claim privilege in regards to the records sought or a propriety interest in the materials. Nonetheless, the court will address the objections to ensure that the subpoenas are for a proper purpose and complies with the requirements of Rule 17(c). See id. at 561.

[3] Rule 17(c) provides:
> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
> (2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

FED. R. CRIM. P. 17(c).

to discover "evidentiary" material. See Bowman Dairy, 341 U.S. at 219-20. To meet the requirement for issuing a Rule 17(c) subpoena, the requesting party must demonstrate that the materials sought are (1) relevant; (2) admissible; and (3) specific. See Nixon, 418 U.S. at 700. A court may quash a subpoena "if compliance would be unreasonable or oppressive." FED. R. CRIM. P. 17(c)(2).

Treacy would have the court apply the lower standard articulated in United States v. Tucker, where the court questioned whether it made "sense to require a defendant seeking to obtain material from a non-party by means of a Rule 17(c) subpoena to meet the Nixon standard." Tucker, 249 F.R.D. 58, 63 (S.D.N.Y. 2008) (Scheindlin, J.). The court determined that the Nixon standard is inappropriate where production is requested by "(A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense." Id. at 66. Upon meeting these criteria, a defendant need only show the request is "(1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." Id. (citing United States v. Nachamie, 91 F.Supp.2d 552, 563 (S.D.N.Y. 2000) (Scheindlin, J.).

The court will not apply the Tucker standard, as the subpoenas were not requested on the "eve of trial."

### Propriety of the Subpoenas

Treacy requests the issuance of seven subpoenas to five third parties. From all five third parties, Treacy requests "[a]ll records (including electronic records) relating to

5

TMP Worldwide Inc.'s or Monster Worldwide Inc.'s stock option grants and option granting practices, for the period December 1, 1996 through June 30, 2006." Additionally, from Akin Gump and Navigant, Treacy also requests "[a]ll records (including electronic records) with respect to determinations about measurement dates for options grants and the type of accounting to apply to options grants of TMP Worldwide Inc. or Monster Worldwide Inc."  While the requested subpoenas may satisfy the Nixon standard of relevance, Treacy has failed to meet the requirement of admissibility or specificity.

Far from showing the subpoenaed documents are admissible, Treacy only argues that the documents are "likely to be admissible."  Treacy also alleges that the materials regarding Myron Olesnyckyj, Monster's former General Counsel and allegedly one of Treacy's co-conspirators, would be admissible because of his belief that Olesnyckyj lied and/or withheld or destroyed documents, and to counter the allegation that it was Treacy who sought to conceal any improper backdating.   These arguments are insufficient to establish admissibility.

"[A]ny document or other materials, *admissible as evidence*, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena." Bowman, 341 U.S. at 221 (emphasis added).  Treacy's argument that the documents *will likely* be admissible does not establish that they have evidentiary value. See, e.g., United States v. Murray, 297 F.2d 812, 821 (2d Cir. 1962) ("Rule 17(c) is a device solely for the obtaining of evidence for the use of the moving party, permitting him to examine the material obtained before trial only where . . . it is necessary that he do so in order to make use of the material as evidence.").  Furthermore, since Treacy does not demonstrate that

6

Olesnyckyj's statement has any evidentiary value outside impeachment, it is precluded under Rule 17(c). See, e.g., Nixon, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").

Moreover, Treacy's requests are insufficiently specific. "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up," the specificity requirement is not met and the requests will be denied. United States v. Noriega, 764 F.Supp. 1480, 1493 (S.D. Fla. 1991). These requests are too generalized, broad and fail to adequately specify the documents sought.

## Conclusion

For the reasons stated above, all subpoenas are denied in their entirety.

**IT IS SO ORDERED**

DATED: New York, New York
December 1, 2008

_____
Robert L. Carter
United States District Judge

7