UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

UNITED STATES OF AMERICA                    08 Cr. 366(RLC)


                    v.


JAMES J. TREACY,

                            Defendant.

———————————————————————X


## MEMORANDUM OF LAW OF NON-PARTY CHARLES FORELLE
## IN SUPPORT OF HIS MOTION TO QUASH SUBPOENA *AD TESTIFICANDUM*


                                    Slade R. Metcalf
                                    Rachel F. Strom
                                    HOGAN & HARTSON LLP
                                    875 Third Avenue
                                    New York, New York 10022
                                    Tel:  (212) 918-3000
                                    Fac:  (212) 918-3100

                                    *Attorneys for Non-Party Charles Forelle*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................1

Factual Background ....................................................................................................2

    A.  Non-Party Charles Forelle .............................................................................2

    B.  The Article And The Interview........................................................................2

    C.  The Indictment................................................................................................3

    D.  The Subpoena And The Instant Application ...................................................4

ARGUMENT.................................................................................................................5

I  THIS COURT SHOULD QUASH THE SUBPOENA BECAUSE THE
   INFORMATION SOUGHT IS PROTECTED BY THE JOURNALIST'S
   PRIVILEGE......................................................................................................5

    A.  The Government Must Overcome The Journalist's Privilege For
       Published And Unpublished Information.........................................................7

    B.  The Government Cannot Overcome Forelle's Journalist's Privilege.................9

       1.  Forelle's Testimony Is Not Relevant...............................................11

       2.  Forelle's Testimony Would Be Unduly Cumulative And Is Not
          Relevant To A "Significant" Issue Of This Case ..........................13

       3.  The Requested Information Is Available From Other Sources ......15

II  THIS COURT SHOULD QUASH THE SUBPOENA BECAUSE IT DOES
    NOT SEEK EVIDENCE RELEVANT OR ADMISSIBLE TO THIS TRIAL .......16

III  IF THIS COURT DETERMINES FORELLE MUST TESTIFY IN THESE
    PROCEEDINGS, ANY SUCH REQUIRED TESTIMONY SHOULD BE
    CLEARLY AND SPECIFICALLY LIMITED.......................................................18

CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

**Page**

Federal Cases

*Dunbar v. Harris,*
 612 F.2d 690 (2d Cir. 1979) ............................................................................... 8

*Gonzales v. Nat'l Broad. Co.,*
 194 F.3d 29 (2d Cir. 1999) ......................................................................... 5, 6, 8

*In Re: Consumers Union of United States, Inc.,*
 495 F. Supp. 582 (S.D.N.Y. 1980) ............................................................. 10, 11

*Lonegan v. Hasty,*
 No. CV-04-2743 (NG)(VVP), 2008 WL 41445 (E.D.N.Y. Jan. 1, 2008) ............... 6

*New York Times Co. v. Gonzales,*
 459 F.3d 160 (2d Cir. 2006) ............................................................................... 6

*S.E.C. v. Seahawk Deep Ocean Tech., Inc.,*
 166 F.R.D 268 (D. Conn. 1996) ................................................................ 6, 7, 19

*United States v. Bellomo,*
 No. 02 CR 140, 2002 WL 1267996 (E.D.N.Y. Apr. 10, 2002) ............................ 16

*United States v. Berberian,*
 767 F.2d 1324 (9th Cir. 1985) ........................................................................... 16

*United States v. Burke,*
 700 F.2d 70 (2d Cir. 1983) ................................................................................. 6

*United States v. Cuthbertson,*
 630 F.2d 139 (3d Cir. 1980) .............................................................................. 12

*United States v. Coriaty,*
 No. 99 CR 1251(DAB), 2000 WL 1099920 (S.D.N.Y. Aug. 7, 2000) ................... 12

*United States v. Giampa,*
 No. 92 CR 437 (PKL), 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) .................. 12, 17

*United States v. Johnson,*
 513 F.2d 819 (2d Cir. 1975) .............................................................................. 12

*United States v. Lorenzo,*
    534 F.3d 153 (2d Cir. 2008) ................................................................12

*United States v. Marcos,*
    No. 87 CR 598(JFK), 1990 WL 74521 (S.D.N.Y. June 1, 1990)......................14, 15

*United States v. Markiewicz,*
    732 F. Supp. 316 (N.D.N.Y. 1990)...........................................................6, 7

*United States v. Nixon,*
    418 U.S. 683 (1974) ........................................................................16

*United States v. Nusraty,*
    867 F.2d 759 (2d Cir. 1989) ................................................................12

*United States v. Russo,*
    302 F.3d 37 (2d Cir. 2002) .............................................................11, 17

*United States v. Strother,*
    49 F.3d 869 (2d Cir. 1995) .................................................................12

*von Bulow v. von Bulow,*
    811 F.2d 136 (2d Cir. 1987) ...............................................................6, 7

<u>State Cases</u>

*In Re Grand Jury Subpoena to Moore,*
    269 A.D.2d 475, 703 N.Y.S.2d 230 (2d Dep't 2000)...........................................18

*People v. Lyons,*
    151 Misc. 2d 718, 574 N.Y.S.2d 126 (City Ct. Buffalo 1991)................................10

*In re Subpoena to Montero,*
    Indictment No. 348/06 (Sup. Ct. Kings Co. Oct. 4, 2007) .......................................9

*People v. Nasser,*
    15 Misc. 3d 499, 830 N.Y.S.2d 892 (Sup. Ct. Westchester Co. 2007) ........................18, 19

<u>Federal Rules</u>

Fed. R. Crim P. 17 ...................................................................5, 16, 18

Fed. R. Evid. 401 .........................................................................16

Fed. R. Evid. 402 .........................................................................16

Fed. R. Evid. 403 .....................................................................16, 17

Fed. R. Evid. 801(d)(2)(A) ...........................................................................................11, 17

<u>Other Sources</u>

*State Executive Department Memorandum,*
     1990 McKinney's Session Laws of N.Y. ................................................................10

Non-party witness Charles Forelle ("Forelle"), by his undersigned attorneys, respectfully submits this memorandum of law in support of his motion pursuant to Rule 17 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.") to quash the subpoena *ad testificandum* served on him by the United States Attorney for the Southern District of New York.[1]

## Preliminary Statement

The federal government seeks to compel a Brussels-based journalist to return to this country in order to provide cumulative evidence with questionable relevance in this criminal proceeding. Although the U. S. Attorneys Office contends that it only wants the journalist to confirm certain quotations made by the criminal defendant here, which were contained in an article co-written by the journalist Forelle, that effort violates Forelle's journalist privilege and in addition, does not meet the normal evidentiary standards for a litigant to compel testimony even at a criminal trial. Furthermore, if Forelle is required to testify, there would be no restriction on the scope of cross-examination by defendant's counsel, which would inevitably delve into the realm of unpublished information. And, in this Circuit, disclosure of a journalist's *unpublished* newsgathering information is subject to an even more exacting burden than the government must meet to compel disclosure of published newsgathering information. In any event, neither standard can be met here. In fact, in looking at this subpoena through the prism of the First Amendment, it is clear the subpoena should be quashed.

---

[1]      The facts relevant to this motion are set forth in the in the accompanying declarations of Slade R. Metcalf (the "Metcalf Decl."), sworn to on the 17th day of December, 2008 and of Charles Forelle (the "Forelle Decl."), sworn to the 15th day of December, 2008, and the exhibits annexed thereto.

**Factual Background**

**A.      Non-Party Charles Forelle**

Non-party Forelle has worked as a professional journalist for *The Wall Street Journal* (the "*Journal*"), a newspaper that is circulated around the world with editions in the United States, Europe and Asia, for over six years.  Forelle Decl. ¶ 1.  During that time, from June 2002 until July 2007, Forelle worked in the Boston bureau of the *Journal*.  *Id.* ¶ 3.  Since July 2007, Forelle has been on foreign assignment living and working in Brussels as a reporter for the *Journal*.  *Id.*

**B.      The Article And The Interview**

The subpoena to Forelle stems from one article that was part of a series of Pulitzer Prize-winning articles, which were written by Forelle and other *Journal* reporters, that uncovered the improper backdating of executive stock options at various corporations, including Monster Worldwide, Inc. ("Monster").  Forelle Decl. ¶¶ 5, 6, 9.  As part of Forelle's investigation into Monster, Forelle spoke to James J. Treacy ("Treacy"), a former executive at Monster and the defendant in this action, about the options granting process at Monster and some of the stock options that Treacy himself received and exercised.  *Id.* ¶ 5.  Following that interview, Forelle authored an article (along with another *Journal* reporter) that was published in the issue of the *Journal* dated June 12, 2006, and was entitled "Monster Worldwide Gave Officials Options Ahead of Share Run Ups" (the "Article").  *Id.* ¶ 6. (A true and correct copy of the Article is annexed to the Forelle Decl. as Exhibit ("Ex.") A).  The Article, through the use of paraphrasing and some quotations from Treacy, as well as through securities filings and interviews with other Monster executives, discusses the possibility that stock options at Monster "were backdated or otherwise timed to boost their value to the recipients."  Forelle Decl., Ex. A.  In the Article, Treacy is quoted and paraphrased as saying that he was not involved in Monster's option-

granting process and that he did not notice the favorable prices of the stock option grants he received. *See id.*

## C.   **The Indictment**

On April 24, 2008, Treacy was indicted on two charges related to his alleged role in a scheme to commit securities fraud while he was an executive and board member of Monster. Metcalf Decl. ¶ 2.   A superseding indictment was filed on July 10, 2008 and a second superseding indictment was filed on August 21, 2008 (the "Indictment"). *Id.* ¶¶ 2, 3. (A true and correct copy of the Indictment is annexed to the Metcalf Decl. as Ex. A).

The Indictment against Treacy charges him with engaging in a conspiracy to commit securities fraud, file false reports with the United States Securities and Exchange Commission (the "SEC"), make false statements to auditors, and falsify books and records (Count 1), and Securities Fraud (Count 2).   Metcalf Decl., Ex. A.   Specifically, the Indictment alleges that Treacy and others at Monster conspired to backdate Monster's stock option grants so that the grants were "in-the-money" grants, *i.e.* stock options with an exercise price lower than the fair market value of the stock grants on the date they were in fact awarded. *Id.* ¶¶ 14-15, 61-62.   The Indictment goes on to allege that Treacy and others falsified Monster's records to hide the backdating of the stock options and that they did not report the "in-the-money" grants to the SEC or Monster's auditors, as required by law. *Id.* ¶¶ 18, 61-62.   Instead, the Indictment states that Treacy and others prepared, and Treacy signed, reports to the SEC that stated that "Monster granted all of its options at the fair market value on the date of the grant and thus, Monster did not record any compensation expense arising from the option grants." *Id.* ¶ 53; *see also id.* ¶ 12. Further, the Indictment alleges that Treacy personally exercised $13.5 million dollars from "in-the-money" stock options that he received while he was an executive at Monster. *Id.* ¶¶ 9-10, 61-62.

By an Opinion dated November 19, 2008, this Court dismissed Count 2 of the Indictment for Securities Fraud. Metcalf Decl. ¶ 4. The government has moved this Court to reconsider its dismissal of Count 2 of the Indictment, and that motion is currently pending before this Court. *Id.*

## D.    The Subpoena And The Instant Application

Forelle was served with the subpoena *ad testificandum* on Thursday, November 27, 2008 during a trip Forelle took to the United States from Belgium to visit his family over Thanksgiving (the "Subpoena"). Forelle Decl. ¶ 8. (A true and correct copy of the Subpoena is annexed to the Forelle Decl. as Ex. C). The Subpoena requires Forelle's presence in this Court on January 12, 2009. Forelle Decl., Ex. C. The Subpoena, which does not include requests for documents or other materials, also does not define the scope of the required testimony. *Id.*

After receiving the Subpoena, counsel for Forelle contacted the issuing party, Assistant United States Attorneys for the Southern District of New York Joshua A. Goldberg and Deidre McEvoy, to determine the potential scope and relevance of Forelle's testimony. Metcalf Decl. ¶ 7. Mr. Goldberg and Ms. McEvoy informed counsel for Forelle that the government intended to limit the scope of Forelle's testimony to confirming the accuracy of the quotations from Treacy as published in the Article. *Id.* Mr. Goldberg and Ms. McEvoy explained that the government intended to use Treacy's quotations in the Article, through Forelle's testimony at trial, as (1) an admission, (2) a false exculpatory statement, and (3) to impeach Treacy if he takes the stand. *Id.*

Additionally, counsel for Forelle contacted counsel for Treacy to determine if Treacy's counsel intended to cross-examine Forelle or if Treacy would similarly limit the scope of Forelle's testimony to confirming the accuracy of Treacy's quotations as published in the Article. *Id.* ¶ 8. Counsel for Treacy informed counsel for Forelle that if Forelle took the stand to confirm the accuracy of Treacy's quotations in the Article, Treacy's counsel did intend to cross-examine

Forelle so that Forelle would give some context to the quotations and provide other meanings to the quoted words. *Id.*

Because of the negative impact testifying in this action would have on Forelle's career as a reporter for the *Journal*, Forelle has invoked the journalist's privilege to avoid testifying and/or divulging information related to the publication of or newsgathering for the Article. Forelle Decl. ¶ 10. Forelle's ability to obtain interviews and elicit information is dependent upon the assurance that he will not be compelled to testify in court any time he researches or prepares articles on a topic that pertains in any way to a civil or criminal matter. *Id.* Here, the impact on Forelle's ability to act as a professional journalist would be particularly severe. *Id.* The *Journal*'s investigation into the backdating of stock options at various corporations has informed numerous investigations and criminal actions. If Forelle had to testify or divulge other information about his newsgathering activities in every one of these matters, the time he would have to devote to being a witness would be extremely detrimental to his duties as a professional journalist. *Id.* As such, this Court should quash the Subpoena to Forelle.

## ARGUMENT

The Subpoena seeks information that has limited – if any – relevance to this criminal trial and is protected by the journalist's privilege. As a result, this Court should quash the Subpoena pursuant to Fed. R. Crim. P. 17.

### I

### THIS COURT SHOULD QUASH THE SUBPOENA BECAUSE THE INFORMATION SOUGHT IS PROTECTED BY THE JOURNALIST'S PRIVILEGE

First, this Court should quash the Subpoena because it seeks information that is protected by the journalist's privilege. The Second Circuit "has long recognized the existence of a qualified privilege for journalistic information." *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 32

(2d Cir. 1999).[2]  This privilege reflects "a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment." *U.S. v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983).  And, while the journalist's privilege applies in civil proceedings, "the important social interests in the free flow of information that are protected by the reporter's qualified privilege are particularly compelling in criminal cases.  Reporters are to be encouraged to investigate and expose, free from unnecessary government intrusion, evidence of criminal wrongdoing." *Id.*

Further, in the Second Circuit, the journalist's privilege applies to confidential or nonconfidential information.  *See von Bulow v. von Bulow*, 811 F.2d 136, 143-44 (2d Cir. 1987); *Lonegan v. Hasty*, No. CV-04-2743 (NG)(VVP), 2008 WL 41445, at *2 (E.D.N.Y. Jan. 1, 2008) ("[w]here non-confidential information is involved, the damage [to a free press] is … no less real.  Requiring journalists and press organizations to respond to subpoenas on a regular basis, even when the requested documents and testimony concern non-confidential matters, imposes costs in time and money that would unnecessarily burden reporters and their employers."). Additionally, courts in this Circuit have applied the privilege to published as well as unpublished information.  *See United States v. Markiewicz*, 732 F. Supp. 316, 317, 319 (N.D.N.Y. 1990) (applying the journalist's privilege where the government "stated that it merely seeks to have the reporters testify that the defendants made the statements reported in the newspapers"); *S.E.C. v. Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D 268, 270 (D. Conn. 1996) (same).

---

[2]   The most recent Second Circuit decision addressing the journalist's privilege is *The New York Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006), in which the Court determined that the journalist's privilege did not protect a reporter's telephone records.  Notably, however, the Second Circuit declined to articulate again a test for the journalist's privilege, concluding instead that "[w]e believe that whatever standard is used, the privilege has been overcome as a matter of law." *Id.*

In this case, there can be no doubt that the journalist's privilege applies here because the Subpoena seeks information about an interview Forelle conducted as part of his reporting for the *Journal* on Monster's stock options process. *See von Bulow*, 811 F.2d at 144 (the journalist's privilege applies to information that was "sought, gathered or received [with the intent] to disseminate information to the public"); Forelle Decl. ¶ 5. And, here, the government cannot overcome this privilege.

## A.    The Government Must Overcome The Journalist's Privilege For Published And Unpublished Information

This Court should require the government to overcome this Circuit's qualified privilege for published and for *unpublished* information because it is clear that if Forelle is forced to take the stand in this action he will be asked to divulge information that was not published in the Article.

As a preliminary matter, the government must overcome a qualified journalist's privilege in order to compel Forelle to testify about the accuracy of Treacy's quotations as published in the Article. Courts in this Circuit have held that in cases such as these, in which a Subpoena seeks to compel a reporter to testify about published non-confidential information, disclosure may be ordered only upon a showing that the information is: "relevant, not unduly cumulative and not available from other sources." *Markiewicz*, 732 F. Supp. at 320; *Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D at 270. Here, the government cannot make such a showing.

In this case, however, the government must also overcome this Circuit's more stringent journalist's privilege that protects unpublished information because if Forelle is compelled to take the stand his testimony will not be limited to published information. Specifically, while the government has stated to counsel for Forelle that the government will limit Forelle's testimony to confirming the accuracy of Treacy's quotations in the Article, the Subpoena itself does not place

any limits on Forelle's testimony.  Metcalf Decl. ¶ 7; Forelle Decl., Ex. C.  Further, Treacy's counsel has made clear that if Forelle takes the stand, Treacy's counsel intends to cross-examine Forelle to provide some "context" for Treacy's quotations in the Article.  Metcalf Decl. ¶ 8.  As such, if Forelle is forced to take the stand it is clear that he will be asked to divulge *unpublished* information that he gathered in preparing the Article.

In this Circuit, in order to compel a journalist to testify about unpublished non-confidential information, the requesting party must meet an even more exacting burden than set forth above.  Specifically, according to the Second Circuit, disclosure may be ordered only upon a showing that the information is "[1] of likely relevance [2] to a significant issue in the case, and [3] [is] not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36.  Because Forelle will be asked to testify about unpublished information, this Court should apply the more exacting *Gonzales* test here.

Further, to the extent this Court determines that the government has been able to meet its burden of compelling Forelle to testify about *published* information but that any cross-examination about *unpublished* information would violate Forelle's journalist's privilege, this Court should quash the Subpoena in its entirety.  The Second Circuit has long held that "[t]he confrontation clause of the sixth amendment guarantees a criminal defendant the right to cross-examine witnesses against him." *Dunbar v. Harris*, 612 F.2d 690, 692 (2d Cir. 1979).  Further, when a defendant's "cross-examination [of a witness] is restricted by" competing privileges, "it may be necessary to strike the direct testimony of that witness." *Id.* (witness' invocation of Fifth Amendment right during cross-examination may requiring striking witness' testimony altogether).  Here, if the Court determines that the defendant's cross-examination, which will necessarily elicit unpublished information, would violate the journalist's privilege, this Court

should prohibit Forelle from testifying at all.  For example, in *In re Subpoena to Montero*, Indictment No. 348/06 (Sup. Ct. Kings Co. Oct. 4, 2007) (annexed hereto as Ex. A), in quashing a subpoena issued by the District Attorney that sought the testimony of a reporter in connection with jailhouse interviews he conducted of the defendants who were on trial for murder, the court noted that, while the district attorney initially promised to limit questions to published information, "the parties could not agree that the scope of the reporter's testimony should be limited to statement [sic] contained in the article."  Thus, because the defense would not stipulate to limiting the reporter's testimony to published information and because the District Attorney then decided that it too would seek unpublished information from the reporter, the District Attorney had to overcome New York's Shield Law's "exacting" burden to compel the reporter to testify about unpublished, non-confidential information, which the District Attorney could not do.  *Id.*  Similarly here, Treacy's counsel has made clear that if Forelle takes the stand Treacy's counsel will ask Forelle to divulge *unpublished* information.   Accordingly, because the government cannot overcome the exacting journalist's privilege as set forth in *Gonzales* for unpublished information, this Court should quash the Subpoena in its entirety.   In any event, under any standard, the Subpoena should be quashed.

**B.**     **The Government Cannot Overcome Forelle's Journalist's Privilege**

        Here, the Government cannot overcome the *Gonzales* or the *Markiewicz* test in order to compel Forelle to testify about published or unpublished information.  Before turning to these tests, however, it is important to note what exactly is at issue here.  After months of research, Forelle and other *Journal* reporters uncovered the improper backdating of executive stock options at numerous corporations, including Monster.  Forelle Decl. ¶ 7.  Their reporting was so effective that it triggered federal authorities to investigate numerous companies and it brought options-granting practices into the spotlight across corporate America.  *Id.*  All told, authorities

investigated around 140 companies, and at least 70 top executives have lost their jobs. *Id.* Numerous former executives, including three Monster executives, are or were facing federal or state criminal charges. *Id.* Indeed, Monster itself has conceded that its former officials intentionally backdated stock option grants and at least one former Monster executive, Treacy's alleged co-conspirator and the former General Counsel at Monster Myron Olesnyckyj ("Olesnyckyj"), has plead guilty to securities fraud and admitted that he and others at Monster systematically backdated stock options at Monster. *Id.*; Ex. B.

Now, after Forelle's extensive investigation and reporting, which uncovered the improper backdating of executive stock options at Monster, the government seeks to use Forelle to bolster its case against Treacy. Forelle Decl. ¶ 7. New York courts have recognized that this is just the type of intrusion into a journalist's investigative process that causes the most severe threat to the freedom of the press. As one New York court stated: "'Journalists … encounter the most problematic incursions into the integrity of the editorial process when they are drawn into the criminal justice system merely because they have reported on a crime. They run the risk of being used as investigative agents of the government or the defense. *The need for protection of non-confidential information and sources is thus greatest in criminal cases. …*'" *People v. Lyons*, 151 Misc. 2d 718, 723, 574 N.Y.S.2d 126, 129-30 (City Ct. Buffalo 1991) (quoting State Executive Department Memorandum, 1990 McKinney's Session Laws of N.Y., at 2332) (emphasis added). Indeed, in *In re: the Application of Consumers Union of United States, Inc.*, 495 F. Supp. 582, 586 (S.D.N.Y. 1980), this Court rejected a defendant's argument that the journalist's privilege was not implicated when a subpoena merely sought non-confidential information. In so holding, Judge Leval stated that the "contention that the discovery is outside of First Amendment concern because it does not seek to identify confidential sources is a total

misconception of the scope of the free press interest.    Regardless [of] whether they seek confidential sources, they seek to examine the reportorial and editorial processes." *Id.*

Similarly here, the government's attempt to compel Forelle to testify about certain statements Treacy made to him during Forelle's investigation into Monster's granting of stock options, also implicates Forelle's reportorial process and is protected by the journalist's privilege.    In the face of this strong public policy against compelling a reporter to testify about his or her reportorial process, the *Markiewicz* or *Gonzales* test weighs heavily in favor of quashing the Subpoena.

### 1.    <u>Forelle's Testimony Is Not Relevant</u>

This Court should quash the Subpoena under the *Markiewicz* or *Gonzales* test because Forelle's testimony has minimal – if any – relevance here.    The government apparently seeks to compel Forelle to testify that the quotations in the Article attributed to Treacy are accurate in order for the government to use Treacy's quotations as (1) an admission, (2) to impeach Treacy's testimony, or (3) as a false exculpatory statement.    Metcalf Decl. ¶ 7.    But, none of these rationales warrant compelling Forelle's testimony here.

First, Treacy's quotations in the Article are not relevant as an admission.    Under Rule 801(d)(2)(A) of the Federal Rules of Evidence ("Fed. R. Evid."), the government may use a defendant's statement to show the *truth* of that statement.    *See United States v. Russo*, 302 F.3d 37, 43 (2d Cir. 2002) ("Statements made by the defendant may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party.") (citing Fed. R. Evid. 801(d)(2)(A)).    Here, in the Article, Treacy is quoted as saying that he was *not involved* in the options granting process at Monster and that he did not notice the favorable prices of the stock option grants he received.    Forelle Decl., Ex. A.    These statements cannot possibly be relevant to showing that Treacy *was* involved in the backdating of

stock option grants at Monster. As such, Forelle's testimony is not relevant for the purposes of an admission.

Second, Forelle's testimony is not relevant for the purposes of impeaching Treacy because Treacy has not testified. As this Court has recognized, "[i]mpeachment statements ... 'ripen into evidentiary material for purposes of impeachment *only if and when the witness testifies at trial.*'" *U.S. v. Giampa*, No. 92 CR 437 (PKL), 1992 WL 296440, at *3 (S.D.N.Y. Oct. 7, 1992) (citing *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980)) (emphasis added). *See also U.S. v. Coriaty*, No. 99 CR 1251(DAB), 2000 WL 1099920, at *7 (S.D.N.Y. Aug. 7, 2000) ("impeachment material is not relevant until a witness has testified"). To date, Treacy has not testified and may never testify. Therefore, the use of Forelle's testimony to impeach Treacy is simply not relevant.

Finally, Treacy's statements in the Article only have minimal, if any, relevance as a false exculpatory statement. A defendant's voluntary and intentional "explanation intending to show his innocence that is later shown to be false" is a false exculpatory statement. *United States v. Strother*, 49 F.3d 869, 877 (2d Cir. 1995). These statements are *not relevant* to establish guilt. *United States v. Nusraty*, 867 F.2d 759, 765 (2d Cir. 1989). They are merely "circumstantial evidence of consciousness of guilt." *United States v. Lorenzo*, 534 F.3d 153, 161 (2d Cir. 2008) (quoting *United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975)). The Second Circuit has repeatedly cautioned that false exculpatory statements have minimal probative value. *Id.* They cannot establish that a defendant knowingly agreed to join a conspiracy unless the government has other evidence establishing the defendant's guilt. *Id.; see also Nusraty*, 867 F.2d at 765 (evidence of a false exculpatory statement could not support conviction because "other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent

with the defendant's innocence as it is to the Government's theory of guilt"). As such, to the extent this Court concludes that Treacy's quotations in the Article could be interpreted as a false exculpatory statement, Forelle's testimony would be – at best – minimally relevant and would be clearly outweighed by the other factors of the journalist's privilege.

**2. Forelle's Testimony Would Be Unduly Cumulative And Is Not Relevant To A "Significant" Issue Of This Case**

Next, this Court should quash the Subpoena because, under the *Markiewicz* test, to the extent Forelle's testimony is at all relevant to confirm Treacy's alleged false exculpatory statement, the testimony is unduly cumulative and under the *Gonzales* test, Forelle's testimony is not relevant to a "significant" issue of this case.

As discussed above, this Circuit has made clear that false exculpatory statements have minimal probative value. As such, Treacy's apparent false exculpatory statement as published in the Article cannot be considered a "significant" issue in this case. Therefore, under the *Gonzales* test, the government nor Treacy's counsel can compel Forelle to divulge any unpublished information for the purposes of establishing or providing context to Treacy's false exculpatory statement.

Further, the government cannot overcome the *Markiewicz* test because the use of Forelle's testimony to confirm the accuracy of Treacy's quotations as published in the Article would be cumulative of other evidence the government intends to present at trial. The government does not need Treacy's quotations in the Article to establish that Treacy was involved in or conscious of the alleged improper backdating of stock option grants because the Indictment is filled with evidence that the government plans to use in order to establish that Treacy was involved in this scheme. For instance, the Indictment cites e-mails from Olesnyckyj to Treacy and others, in which Olesnyckyj stated that he wanted to change the date of a stock

option grant from January 2, 2001 to March 13, 2001 because Monster's stock had dropped since January 2001.  Metcalf Decl., Ex. A, ¶ 28-31.  In one e-mail to Treacy and others, Olesnyckyj asks "whether any information has been provided to [Monster's auditors] that would preclude Monster from 'ignoring the January option grants (i.e. they never happened).'"  *Id.* ¶ 30.  In another e-mail to Treacy and Others, Olesnyckyj states that he presumes that another co-conspirator Andrew J. McKelvey, the former Chief Executive at Monster, was "able to finesse any [auditor] issues over" the changed date in the stock option grant.  *Id.*  Further, the Indictment goes on to cite numerous e-mails evidencing that *Treacy himself* approved backdated stock option grants.  *Id.* ¶¶ 31, 40, 43, 44, 47.  Clearly then, the government intends to present substantial evidence that it believes will establish that Treacy was aware of and involved in the backdating of stock option grants at Monster.

As such, Forelle's testimony would be unduly cumulative and not relevant to a significant issue in this criminal action.  One case is particularly instructive here.  In *United States v. Marcos*, No. 87 CR 598(JFK), 1990 WL 74521 (S.D.N.Y. June 1, 1990), CBS Inc. ("CBS") moved to quash a subpoena served upon it by the government that sought material CBS prepared in connection with a television interview with the defendant Imelda Marcos.  The government argued that it was entitled to the material because the television interview contained false exculpatory statements made by Mrs. Marcos in which she denied that she was not aware of her husband's financial affairs.  *Id.* at *3.  The court held that, while the defendant's false exculpatory statements were relevant to showing that the defendant was aware of and participated in her husband's financial affairs, the subpoena to CBS must still be quashed pursuant to the journalist's privilege.  *Id.*  In so holding, the court noted that false exculpatory statements have limited value to a government's "proof of a crime," and, in any event "a

significant portion of the testimony given in this case controverts the defense assertion that Mrs. Marcos was not involved in or aware of financial activities." *Id.* at *4. As such, the court held that because the requested information had limited probative value and was cumulative of other evidence the government could not defeat CBS' qualified journalist's privilege. *Id.*

Similarly here, Forelle's testimony, which would have minimal if any probative value, clearly would not be relevant to a "significant issue" of this case and, as the Indictment makes clear, Forelle's testimony will be cumulative of the government's evidence that Treacy was well aware of the options granting process at Monster. As such, under either the *Markiewicz* or *Gonzales* test, this Court should quash the Subpoena because the government cannot defeat Forelle's qualified journalist's privilege.

### 3.   The Requested Information Is Available From Other Sources

Finally, under the *Markiewicz* or *Gonzales* test, the Subpoena should be quashed because the information requested is available from other sources. Here, there is no evidence to suggest that the government made any efforts to obtain the requested information from anyone other than Forelle. The government must make an effort to obtain the requested information from other sources, including testimony from Treacy himself (if he chooses to testify) or his alleged co-conspirator Olesnyckyj, before requesting Forelle to testify. Before the government attempts, and fails, to elicit this evidence from other sources at trial, the Subpoena to Forelle is wholly premature. Compelling a reporter to discuss his or her reportorial and editorial processes should be used as a last resort – not the first.

Accordingly, the requested information is protected from disclosure by the journalist's privilege and this Court should quash the Subpoena.

## II

### THIS COURT SHOULD QUASH THE SUBPOENA BECAUSE IT DOES NOT SEEK EVIDENCE RELEVANT OR ADMISSIBLE TO THIS TRIAL

Second, even if the requested information is not protected by the journalist's privilege, this Court should quash the Subpoena because it seeks evidence that, if not wholly irrelevant to this trial, has extremely limited relevance and may be inadmissible at trial. Rule 17(c)(2) of the Fed. R. Crim. P. provides that "[o]n motion made promptly, the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." [3] In order to clear Rule 17(c)(2)'s "unreasonable or oppressive" hurdle, the United States Supreme Court requires the subpoenaing party to show that the information or materials sought are: (1) relevant; (2) admissible; and, (3) specifically identified. *United States v. Nixon*, 418 U.S. 683, 700 (1974).

Under any standard, the Subpoena is unreasonable and oppressive because it does not seek information relevant or admissible to the criminal prosecution of Treacy. According to Fed. R. Evid. 402, "[e]vidence which is not relevant is not admissible." Rule 401 of the Fed. R. Evid. defines relevance as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, even if evidence is relevant, it may still be inadmissible under Fed. R. Evid. 403 "if its probative value is substantially outweighed by the danger of unfair

---

[3] While there is no explicit provision in Rule 17 for quashing a subpoena *ad testificandum*, courts, including this one, have looked to whether a subpoena *ad testificandum* is "unreasonable or oppressive" in determining whether to quash it. *U.S. v. Bellomo*, No. 02 CR 140, 2002 WL 1267996, at *2 (E.D.N.Y. Apr. 10, 2002) (denying motion to quash subpoena *ad testificandum* because it was not unreasonable or oppressive); *U.S. v. Seeger*, 180 F. Supp. 467, 468 (S.D.N.Y. 1960) (same). *See also U.S. v. Berberian*, 767 F.2d 1324 (9th Cir. 1985) (holding district court did not abuse discretion in quashing subpoena *ad testificandum*). As such the standard is the same as if this were a motion quashing a subpoena *duces tecum*.

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Here, as discussed above, Forelle's confirmation of Treacy's statements in the Article has minimal – if any – relevance. To the extent Forelle's testimony has any probative value, the testimony would be inadmissible under Fed. R. Evid. 403 because it would be a needless presentation of cumulative evidence. As discussed above, the government's argument that Treacy's testimony could be used as an "admission" is clearly not applicable here. Under Fed. R. Evid. 801(d)(2)(A), the government may use the statement by the defendant to show the *truth* of that statement. *See Russo,* 302 F.3d at 43. But, the truth of Treacy's quotations in the Article adds nothing to this case. Obviously, Treacy's statements that he was not involved in the option granting process at Monster will not have any tendency to show that he *did* participate in the systemic backdating of option grants at Monster. Moreover, as established above, the government's intention to use Forelle's testimony to impeach Treacy is not relevant unless and until Treacy testifies. *Giampa*, 1992 WL 296440, at *3 (quashing subpoena under Fed. R. Crim. P. 17 because the requested impeachment material was not relevant until the witness testified). Because Treacy has not testified to date, use of Forelle's testimony to impeach Treacy is wholly premature. Finally, and as also established above, the only potential relevance to Forelle's testimony, to confirm the accuracy of Treacy's false exculpatory statement, would merely be cumulative of the government's evidence – as laid out in the Indictment – establishing that Treacy was conscious of the improper options granting process at Monster. *See* Metcalf Decl., Ex. A, ¶¶ 28-31, 40-44, 47, 53-54. Under Fed. R. Evid. 403, considerations of delay, waste of time, and needless presentation of cumulative evidence clearly weigh against compelling Forelle to testify merely to establish Treacy's alleged false exculpatory statement. As such, this court

should spare Forelle the professional and personal hardship of traveling from Belgium merely to present cumulative evidence.   Forelle Decl. ¶ 10.   Therefore, pursuant to Fed. R. Crim. P. 17(c)(2), this Court should quash the Subpoena to Forelle.

**III**

**IF THIS COURT DETERMINES FORELLE MUST
TESTIFY IN THESE PROCEEDINGS, ANY SUCH REQUIRED
TESTIMONY SHOULD BE CLEARLY AND SPECIFICALLY LIMITED**

While it is clear that the government will not be able to overcome the journalist's privilege or the standard under Fed. R. Crim. P. 17(c)(2) to require Forelle to testify in these proceedings, if this Court determines that Forelle must take the stand, any testimony should be strictly limited to the confirmation of the accuracy of Treacy's quotations as published in the Article.

As discussed above, while the government has stated to counsel for Forelle that the government will limit Forelle's testimony to confirming the accuracy of Treacy's quotations in the Article, the Subpoena itself does not place any limits on Forelle's testimony and Treacy's counsel has made clear that if Forelle takes the stand, Treacy's counsel intends to cross-examine Forelle to provide some "context" for Treacy's quotations in the Article.   Metcalf Decl. ¶¶ 7, 8; Forelle Decl., Ex. C.   As such, if this Court requires Forelle to testify at all – despite the fact that the government has not made a proper showing here – it should strictly limit that testimony in advance.   For example, in *In Re Grand Jury Subpoena to Moore*, 269 A.D.2d 475, 476-77, 703 N.Y.S.2d 230, 231(2d Dep't 2000), the court required reporters to testify only "'in response to questions aimed solely to authenticate for admission as evidence before the Grand Jury the videotape broadcast … and the newspaper article'."   The court required the District Attorney to "refrain from inquiring about any conversations that were not published or broadcast."   *Id.* Similarly, in *People v. Nasser*, 15 Misc. 3d 499, 502, n.3, 830 N.Y.S.2d 892, 895, n.3 (Sup. Ct.

Westchester Co. 2007), the court required a reporter to testify in a criminal action regarding only "contents of [witness's] statement as contained in the newspaper article". *Id.* The court specifically stated that the subpoenaing party had "no intention of seeking any testimony regarding the circumstances under which the statement was made," and also noted that "nothing in this Court's decision prohibits the witness from claiming the privilege with respect to any testimony sought to be elicited by defense counsel that arguably constitutes unpublished information which falls outside the parameters of the testimony discussed during oral argument." *Id. See also Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D at 272 (limiting the subpoena to "the verification [of published statements] testimony discussed herein").

As such, any testimony here – if required by the Court – should be similarly limited. Forelle should only be required to testify as to the authenticity of Treacy's quotations that were published in the Article. In addition, this Court should specifically determine that Forelle will not be required to testify on direct or cross examination as to any other topics related to the Article, including any unpublished materials or newsgathering related to the Article. In short, should this Court require any testimony from Forelle in these proceedings, it should be strictly limited to the confirmation of the accuracy of Treacy's quotations as published in the Article.

## CONCLUSION

For all of the foregoing reasons, non-party Charles Forelle respectfully requests that this Court issue an order quashing the Subpoena and awarding Forelle costs and reasonable attorney's fees for making the present motion, and granting such other and further relief as this Court deems appropriate.

Dated: December 17, 2008

Respectfully submitted,

HOGAN & HARTSON LLP

By: _____
Slade R. Metcalf
Rachel F. Strom
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
Tel.  (212) 918-3000
Fac.  (212) 918-3100

*Attorneys for Non-Party Charles Forelle*